UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HIRUY AMANUEL,<br>        Plaintiff,<br>    v.<br>ED SOARES,<br>        Defendant. | Case No. 13-cv-05258 NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 24 |

The Court considers whether Menlo Park Police Sergeant Ed Soares violated Hiruy Amanuel's constitutional rights by unreasonably prolonging a traffic stop. During the eighteen-minute traffic stop, officers first questioned Amanuel and his brother, Jammo, about their illegal right turn and their arrest history. Soares then arrived on the scene and questioned Jammo about an upcoming criminal trial in which Jammo was a defense witness. Amanuel alleges that Soares' questions were aimed at intimidating him and his brother, and by unreasonably prolonging the stop, constituted an unlawful seizure under the Fourth Amendment.

In this summary judgment motion, Soares challenges (1) all causes of action against Soares in his official capacity; (2) the unreasonable search claim; (3) the unreasonable seizure claim; and (4) punitive damages as to all claims. Additionally, Soares claims qualified immunity from suit for any potentially unreasonable seizure.

/

Case No. 13-cv-05258 NC

The Court finds that suit against Soares in his official capacity is unavailable. The Court GRANTS summary judgment for the defendant as to that issue. However, the Court finds that there is a triable issue of fact as to the unlawful search claim and DENIES summary judgment on that issue. Also, the Court finds there is a triable issue of fact as to the reasonableness of Amanuel's extended seizure during a traffic stop. The Court concludes that qualified immunity does not apply in this case because the law was clearly established that a reasonable officer would know that prolonging a traffic stop beyond its investigative purpose is an unreasonable seizure. Thus, the Court DENIES Soares' motion for summary judgment as to the unreasonable seizure claim. Finally, the Court DENIES summary judgment as to punitive damages because there is a triable issue of fact as to Soares' intent in detaining Amanuel.

## I.   BACKGROUND

### A.   Facts Presented

The parties have taken the depositions of plaintiff Hiruy Amanuel ("H.A. Dep." Dkt. No. 24-3, Exh. B), his brother, Jammo Amanuel ("J.A. Dep." Dkt. No. 24-3, Exh. C), and defendant Ed Soares ("E.D. Dep." Dkt. No. 24-3, Exh. D). Additionally, Officer Joshua Venzon, the initiating officer, took an audio recording of the traffic stop ("Rec."), which has been provided to the Court. *See* Dkt. No. 24 at Decl. of William A. Dixon, Exh. A. The defendant provided the Court with an official transcript of the audio recording, made for state court proceedings in *People v. Pine*, but both parties acknowledge that it is inaccurate and unreliable. *Id.* Thus, the Court relies on the audio recording for the events that occurred during the stop.

### B.   January 9, 2013 Traffic Stop

Around 1:00 a.m. on January 9, 2013, Hiruy Amanuel picked up his intoxicated brother, Jammo Amanuel, from downtown Palo Alto. H.A. Dep. 43-46; J.A. Dep. 14-18; E.S. Dep. 24-25. Amanuel was driving a black Mercedes SL 500 that was loaned to him by the Mercedes dealership while his vehicle was in the shop. H.A. Dep. 43-46. He quickly crossed several road lanes to make a right hand turn at the intersection of Willow

1    Road and Newbridge Street in Menlo Park, California.  H.A. Dep. 43-46; J.A. Dep. 14-18;
2    E.S. Dep. 24-25.
3        Menlo Park Police Officer Joshua Venzon pulled over Amanuel.  H.A. Dep. 43-46;
4    J.A. Dep. 14-18; E.S. Dep. 16.  Soares was not initially at the scene.  Officer Venzon
5    approached the car and informed Amanuel that he initiated the traffic stop because
6    Amanuel made a right hand turn from the middle lane on Willow Road in less than twenty
7    feet.  H.A. Dep. 17-19; Rec. 0:12.  Officer Venzon asked Amanuel to show his license and
8    asked if Amanuel had any alcohol.  Rec. 0:40.  Officer Venzon ran the driver's license
9    number and asked Amanuel for the car registration and dealership information.  Rec. 0:54-
10   1:01.  Dispatch informed Officer Venzon that Amanuel had a prior history for an arrest.
11   Rec. 1:58.  Officer Venzon then asked Jammo for his identification.  Rec. 2:18.  Officer
12   Venzon asked Amanuel if he had any prior arrests, and Amanuel replied that he had a
13   pending DUI case.  Rec. 3:08-3:20.
14       Approximately 3:30 minutes into the stop, two more officers arrived on the scene in
15   a second patrol car.  E.S. Dep. 24-26.  Officer Venzon asked dispatch about the DUI case,
16   but dispatch did not have record of a DUI probation.  Rec. 3:35-3:40.  Officer Venzon then
17   performed a sobriety test to see if Amanuel was under the influence of alcohol.  H.A. Dep.
18   73-74.  An officer asked to see the key to the car.  Rec. 4:33.  After some additional
19   questioning about the car ownership, approximately 7 minutes into the stop, Amanuel or
20   his brother, it is unclear whom, asked "All done?" and an officer replied, "Thank you for
21   your help."  Rec. 7:05-7:07.
22       The officers had a muffled conversation, and approximately one minute later,
23   returned to questioning Amanuel.  Rec. 7:07-7:58.  The officers asked Amanuel whether
24   he had any past arrests, and he responded, "I mean is this relevant to anything?"  Rec.
25   8:02-8:07.  An officer replied, "I mean you're being real cool up until now, so just."
26   Rec. 8:07-8:13.  Amanuel then told the officer about a 2009 federal case that was resolved,
27   and the officers question him about that case for the following two minutes.  Rec. 8:20-
28   10:19.

When Amanuel was stopped, Soares was at the police department about a mile and a half away. E.S. Dep. 14. He heard over the police radio that Officer Venzon was performing a warrant check for Jammo. E.S. Dep. 14-17. Soares had been asked by the San Mateo County District Attorney to obtain contact information for Jammo to serve him with a subpoena to testify in a state court case, *People v. Stephen Pine*. E.S. Dep. 17-22. In the *Pine* case, Soares arrested defendant Stephen Pine for the sale of marijuana and possession of a handgun in March 2011. E.S. Dep.19-20. Jammo was detained by Soares as part of the March 2011 arrest of Pine and was a witness to the arrest and surrounding events. J.A. Dep. 43-48, E.S. Dep. 19-20. The parties disagree whether Amanuel was also a witness in that case. When Soares heard that Officer Venzon was performing a warrant check for Jammo, he drove to the scene. E.S. Dep. 17-22. Soares testified that his purpose was to obtain Jammo's contact information to serve him with the subpoena. E.S. Dep. 17-22.

Approximately ten minutes into the traffic stop, Soares arrived on the scene. Rec. 10:20. Amanuel recognized Soares and said "so when I had my federal case, this is the guy who arrested me." Rec. 10:20-10:28. The following conversation occurred:

Officer (unknown): This guy?

Amanuel: Yeah, he arrested me.

Soares: Tell them why.

Amanuel: Because I had a phone—I got convicted of a phone count. I was indicted on.

Soares: No. What did we catch you doing?

Amanuel: I got convicted of a phone count.

Soares: Yea, that's what you got convicted of, but what did we catch you doing?

Amanuel: Come on. I don't want to get into any, it's not important. It's all in the past.

Soares: How much coke did you trans—how much coke did you sell to [unintelligible]?

Case No. 13-cv-05258 NC                4

1   Rec. 10:28-10:53.

2       Approximately eleven minutes into the traffic stop, Soares asked Jammo for his
3   current address. Rec. 11:03. Soares told Jammo, "The reason why I'm here is because
4   you need to be in court next week." Rec. 11:10. Jammo responded, "I am going to be in
5   court next week." Rec. 11:14. Soares said, "Okay," and Jammo repeated, "I am." Rec.
6   11:14.

7       Soares asked for Jammo's phone number, and Jammo gave Soares a number. Rec.
8   11:15-11:25. Soares asked, "That phone right there?" and Jammo replied "It should be."
9   Rec. 11:25-11:28. Soares confirmed, "Hold up. This one right here?" Rec. 11:28. During
10  his deposition, Soares was asked, "At any point did you reach into the car and take his –
11  Jammo's phone?" E.S. Dep. 29. Soares replied, "I don't remember." E.S. Dep. 29.
12  Soares was asked, "Do you remember ever looking through his phone for phone numbers
13  or addresses or anything?" E.S. Dep. 29. Soares responded, "I may have, I don't recall."
14  E.S. Dep. 29.

15      Soares then asked for Amanuel to provide Jammo's phone number approximately
16  thirteen minutes into the stop. Rec. 13:20. An officer told Amanuel, "You just used this
17  phone to call [Jammo] to get the directions," and Soares asked, "So what's the number?"
18  Rec. 12:44-12:58. Amanuel responded, "The number should be on there." Rec. 12:52-
19  12:55. Soares said, "No, no, it's your cell phone, you tell me what number it is." Rec.
20  12:55-12:58. Subsequently, Amanuel, Jammo, and officers at the scene continue to
21  discuss whether Jammo's number was on Amanuel's phone. Rec. 12:58-13:21. It is
22  unclear who is speaking and who has possession of Amanuel's phone.

23      After further questioning about Amanuel and Jammo's drinking and confirming the
24  correct phone number for Jammo, Soares asked Jammo if he had been subpoenaed. Rec.
25  13:20-15:21. Fifteen minutes into the stop, Jammo confirmed, "Yea, I did. I'm on my
26  way to court on the 14th, right? 13th or 14th? I'll see you in court." Rec. 15:19-15:21.

27      Soares then asked Jammo if he was going to lie at the court hearing. The following
28  conversation took place from 15:29-15:41 in the recording:

Case No. 13-cv-05258 NC         5

1     Soares:  Yea I'll be there.  Are you going to lie again?

2     Jammo:  I never

3     Soares:  Like you did last time?

4     Jammo:  I do not know.

5     Soares:  We caught you in a whole bunch of lies.  You do it again, that's perjury.

6     Jammo:  Perjury.  I understand perjury.

7     Soares:  You understand that?

8     Jammo:  I would never perjure.

9     Soares:  You did the last time.

10     Jammo:  I understand.

Once Jammo's phone number was confirmed by dispatch, Soares asked for Jammo's address.  15:41-16:03.  Jammo did not give Soares an address.  Rec. 16:03-17:27.

Seventeen minutes into the stop, an officer stated, "I'm done."  Rec. 17:27.  An officer asked Amanuel, "That's your phone right?"  Rec. 17:40.  Amanuel replied, "Yes, sir" and the officer responded, "Here you go."  Rec. 17:40-17:44.  The officers gave back Amanuel's ID and car key.  Rec. 17:44-17:58.  The officers did not issue a ticket.  Rec. 17:58-18:13.

Neither brother appeared at the trial of *People v. Pine*, and neither testified for the defense.  E.S. Dep. 22-24.

### C. Procedural History

On November 12, 2013, Hiruy Amanuel sued the City of Menlo Park, Menlo Park Police Department, Ed Soares in his individual and official capacities, Officer James Luevano in his individual and official capacities, and Officer Jeffries in his individual and official capacity.  Dkt. No. 1.  The complaint alleges four causes of action: (1) unreasonable search under § 1983; (2) unlawful detainment under § 1983; (3) conspiracy to violate plaintiff's civil rights under § 1985; and (4) a *Monell* claim against all defendants under § 1983.  *Id.*  On November 11, 2014, plaintiff voluntarily dismissed the third and fourth causes of action, and all defendants except for Soares.  Dkt. No. 21.  On

Case No. 13-cv-05258 NC      6

1  December 24, 2014, Soares, as the remaining defendant, moved for summary judgment.
2  Dkt. No. 25.  The Court held a hearing on the motion on January 28, 2015, and stayed the
3  case pending the Supreme Court opinion in *Rodriguez v. United States*, 575 U.S. __, 135
4  S. Ct. 1609 (2015), which presented similar facts and questions of law.  Shortly after that
5  decision was issued on April 21, 2015, this Court ordered the parties to submit
6  supplemental briefing to address the impact of the decision.  Dkt. No. 36.

## II.  LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  Bald assertions that genuine issues of material fact exist are insufficient.  *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial.  Fed. R. Civ. P. 56(c); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)).  All justifiable inferences, however, must be drawn in the light most favorable to the nonmoving party.  *Tolan*, 134 S. Ct. at 1863 (citing *Liberty Lobby*, 477 U.S. at 255).

//

## III. DISCUSSION

The complaint has only two remaining causes of action under 42 U.S.C. § 1983 for (1) unreasonable search; and (2) unreasonable seizure. Amanuel seeks compensatory damages, punitive damages, costs, and attorneys' fees. Title 42 U.S.C. § 1983 provides a cause of action for the deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States" by any person acting "under color of any statute, ordinance, regulation, custom, or usage." *Gomez v. Toledo*, 446 U.S. 635, 639 (1980). But § 1983 "is not itself a source of substantive rights"; rather it provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-394 (1989). Soares does not contest that he was acting in his official capacity as a police officer when he engaged in conversation with Amanuel and Jammo during the traffic stop.

Soares challenges (A) all causes of action against Soares in his official capacity; (B) the unreasonable search claim; (C) the unreasonable seizure claim and Amanuel's standing to bring the claim; (D) punitive damages availability as to all claims; and (E) Soares claims qualified immunity from suit for any potentially unreasonable seizure.

### A. Official Capacity of Soares

The complaint states that Amanuel sued Soares in both his individual and official capacity. Dkt. No. 1 ¶ 7. Generally, an officer can be sued in his official capacity and his individual capacity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official, [so] 'the entity's policy or custom must have played a part in the violation of federal law.'" *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). A government entity is not liable for conduct under 42 U.S.C. § 1983, unless plaintiff demonstrates that his harm stems from a government custom or policy, under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

Soares argues that the Court should dismiss all claims against him in his official capacity because a government policy or custom is not at issue. Dkt. No. 24 at 10. Amanuel has voluntarily dismissed his fourth cause of action, where he pled a *Monell*

claim, alleging such a government policy. Dkt. Nos. 21, 23. Additionally, no facts have been presented to the Court to suggest that Amanuel intends to demonstrate that Soares was acting in reliance on a government custom or policy. Dkt. No. 26. Thus, the Court GRANTS defendant's motion for summary judgment and dismisses all claims against Soares in his official capacity.

### B. Unreasonable Search

Soares brings his motion for summary judgment on both remaining causes of action, including the unreasonable search claim. Dkt. No. 24 at 2. However, Soares presents scant factual evidence and legal arguments on this claim. Soares argues that Amanuel has not alleged in the complaint or in his deposition that he was searched. Dkt. No. 24 at 11. In support, Soares cites to Amanuel's deposition testimony that he never exited the vehicle. H.A. Dep. 73-74. Soares does not cite any cases or additional factual evidence that no search occurred. Dkt. No. 24 at 11. However, drawing all inferences and resolving all doubt in favor of the nonmoving party, the Court cannot find that Soares is entitled to summary judgment on this claim. The fact that Amanuel remained in the vehicle does not alone support the conclusion that no search occurred. The Court considers the audio recording and Soares' deposition, which supports the inference that Soares may have had possession of Jammo or Amanuel's phone at some point during the stop. Rec. 11:25-13:21, E.S. Dep. 29. It is unclear whether officers took possession of a phone when trying to obtain Jammo's phone number. Rec. 12:44-13:21. At the end of the stop, an officer appears to give Amanuel's phone back when he says "Here you go" referring to a phone. Rec. 17:40-17:44. Drawing all inferences in favor of Amanuel, the Court finds that Amanuel may have a claim for an unlawful search of his cell phone. Because Soares has not met his initial burden under Rule 56 to show that he is entitled to judgment as a matter of law, the Court DENIES Soares' motion for summary judgment as to the unreasonable search claim.

//

Case No. 13-cv-05258 NC                9

**C.   Unreasonable Seizure**

Amanuel alleges that the traffic stop initiated by Officer Venzon and prolonged by Soares was an unlawful seizure under the Fourth Amendment. Dkt. No. 1 ¶ 33. First, Soares argues that the initial stop was based on probable cause because Amanuel admits he made an illegal turn. Dkt. No. 24 at 10. Therefore, the entire stop was reasonable. Additionally, Soares argues that because Officer Venzon initiated the stop, Soares is not liable for the reasonableness of that encounter. Dkt. No. 24 at 10. Second, Soares argues that he did not prolong the traffic stop beyond its initial purpose to address the traffic violation. Third, Soares argues that even if the stop was prolonged, Soares had a valid purpose to obtain Jammo's contact information to serve him with a subpoena. Fourth, Soares argues that Amanuel does not have standing to assert his claims for an unreasonable seizure because Soares' conduct was directed towards Jammo and not Hiruy Amanuel.

**1.   Initial Traffic Stop Was Reasonable.**

Generally, a traffic stop constitutes a seizure under the Fourth Amendment and must be reasonable. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). A traffic stop is reasonable if it is based on probable cause that illegal activity has occurred, such as a traffic violation. *Id.* at 810. However, "[a] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. __ , 135 S. Ct. 1609, 1612 (2015).

Here, Amanuel concedes that the initial traffic stop was justified because Amanuel made an illegal turn. Dkt. No. 26 at 9. Amanuel argues that the stop was impermissibly prolonged by Soares for the purpose of harassing and intimidating him and his brother. *Id.* Soares argues that the stop as a whole was reasonable, and he had a legitimate purpose in obtaining Jammo Amanuel's contact information. Dkt. No. 24 at 12. Therefore, the Court considers whether there is a triable issue of fact as to whether the stop was unreasonably prolonged beyond its original purpose.

/

Case No. 13-cv-05258 NC           10

**2.      Traffic Stop Was Extended Beyond Its Initial Purpose.**

"A seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez*, 135 S. Ct. at 1614. An officer's mission during a traffic stop includes "ordinary inquiries incident to [the traffic] stop," such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Caballes*, 543 at 408; *Delaware v. Prouse*, 440 U.S. 648, 658-660 (1979). An officer may not prolong the stop beyond the mission of the stop "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez*, 135 S. Ct. at 1615.

In *Rodriguez,* the Supreme Court rejected the government's argument that a traffic stop could be extended to permit officers to conduct a dog sniff of the outside of the car. *Id.* Although a dog sniff would be permissible if conducted during the routine traffic stop, it must be supported by reasonable suspicion if conducted outside the traffic stop's scope of inquiry. *Id.* The Supreme Court also rejected the government's argument that a traffic stop can be extended for unrelated questioning if the extension was *de minimis*. *Id.* at 1616.

Applying *Rodriguez*, the Ninth Circuit concluded that not only was a dog sniff impermissible after the traffic stop concluded, but also an ex-felon check was unreasonable. *United States v. Evans*, No. 14-10024, 2015 WL 2385010, at *15 (9th Cir. May 20, 2015). There, police officers stopped Evans and his passenger for a traffic infraction. *Id.* at *6. During the following eleven minutes, the officers performed vehicle records and warrant checks, which turned up no reasonable suspicion of criminal wrongdoing. *Id.* at *7. The officers did not issue a ticket at that time, but instead requested an ex-felon check, which took eight minutes for dispatch to complete.

1   *Id.* at **7-9. During that time, officers questioned Evans on topics unrelated to the traffic
2   violation or Evans' prior whereabouts. *Id.* at *15. Twenty-one minutes after stopping
3   Evans, dispatch informed the officer that Evans had been convicted twice for "drug related
4   charges." *Id.* at *9. At that time, the officer "gave Evans a warning, returned his license
5   and paperwork, and shook his hand, informing him 'you're good to go.'" *Id.*
6   Subsequently, another officer on the scene determined he had reasonable suspicion to
7   perform a dog sniff of the car. *Id.*

8         The Ninth Circuit applied *Rodriguez* and concluded that the unlawful seizure
9   occurred eleven minutes into the stop, when officers requested an ex-felon check, well
10  before the dog sniff occurred. *Id.* at *15. "The ex-felon registration check, unlike the
11  vehicle records or warrants check, was wholly unrelated to [the officer's] 'mission' of
12  'ensuring that vehicles on the road are operated safely and responsibly.'" *Id.* (quoting
13  *Rodriguez*, 135 S. Ct. at 1612). Additionally, the Court concluded that it was immaterial
14  that the officers only issued a ticket after the ex-felon check because the "critical question"
15  is whether the check prolonged the stop. *Id.* The Court specifically noted that the ex-felon
16  check was not a "negligibly burdensome" precaution taken by police officers because the
17  eight minutes for dispatch to conduct the check "effectively *doubled* the length of Evans'
18  detention." *Id.* at *16 (emphasis in original).

19        Here, *Evans* is directly applicable. Officer Venzon initially pulled Amanuel over
20  for an illegal right turn. Dkt. No. 24-4 at Exhibit A at 1. Venzon checked Amanuel's
21  driver's license, ran his name for outstanding warrants, inspected the automobile's
22  registration, and conducted a sobriety test within the first seven minutes of the police stop.
23  Rec. 0:00-7:05. After completing the routine checks, Amanuel or his brother asked an
24  officer, "All done?" and the officer replied, "Thank you for your help." Rec. 7:05-7:07.
25  Seven minutes into the stop, all inquiries related to the traffic stop were concluded.
26  Officers had checked Amanuel's license, warrants, and registration: all the questions
27  identified by the Supreme Court in *Rodriguez* as appropriately related to the traffic
28  infraction.

1          Without returning Amanuel's license, car keys, or issuing a citation, the officers on

2   scene discussed something out of the range of the audio recording. Rec. 7:07-7:58. Eight

3   minutes into the stop, an officer (it is unclear which officer, but Soares was not on the

4   scene yet) confirmed with Amanuel that he is not on probation or parole. Rec. 8:02-8:07.

5   After receiving confirmation, the officer began asking Amanuel questions about a prior

6   arrest from 2009. 8:20-10:19. These questions are akin to the ex-felon check in *Evans* and

7   the Court concludes were not reasonably related to the traffic infraction.

8          Ten minutes after Amanuel was pulled over, Soares arrived and began talking to

9   Amanuel and Jammo. Rec. 10:20. Soares engaged in conversation and questioning for the

10  next seven minutes. Rec. 10:20-17: 27. Soares does not contend that his conversation was

11  related to receiving information about the traffic violation. In fact, Soares acknowledges

12  that his questioning was for the purpose of obtaining subpoena information and for

13  ensuring that Jammo knew not to commit perjury. E.S. Dep. 17-22. Eighteen minutes

14  after initiating the stop, the officers gave Amanuel back his phone, identification, and car

15  key and permitted him to leave without any citation. 17:44-17:58.

16         The Court concludes that drawing all inferences and resolving all doubt in favor of

17  the nonmoving party, this inquiry was not related to the purpose of the traffic stop. The

18  officers had probable cause to pull over Amanuel, and their lawful seizure extended

19  through the first eight minutes of the stop. Eight minutes into the stop, officers obtained

20  all the information they needed related to the traffic infraction and officer safety, and they

21  should have issued a ticket at that time if necessary. Instead, for the following ten minutes,

22  officers continued to question Amanuel and Jammo on unrelated topics. Thus, although

23  the police officers were justified in detaining Amanuel initially, they were not justified in

24  seizing him beyond the first eight minutes of the stop, without further reasonable

25  suspicion.

26  ///

27

28

### 3. Reasonable Suspicion

When a police stop has been prolonged beyond the initial purpose of the stop, an officer must demonstrate reasonable suspicion to continue the seizure. *Rodriguez*, 135 S. Ct. at 1615. Detainment for the purpose of harassing or intimidating an individual is unreasonable. *Liberal v. Estrada*, 632 F.3d 1064, 1079-82 (9th Cir. 2011).

Defendant cites to *United States v. Mendez*, 476 F.3d 1077, 1080-81 (9th Cir. 2007) and *United States v. Turvin*, 517 F.3d 1097 (9th Cir. 2008) for the proposition that "an officer may ask questions in the course of a traffic stop unrelated to the probable cause purposes of the stop" without further reasonable suspicion. Dkt. No. 26 at 4-5. In those cases, officers asked questions unrelated to the traffic stop while dispatch was checking for outstanding warrants and confirming the car registrations. *Mendez*, 476 F.3d at 1080-81; *Turvin*, 517 F.3d at 1103. In *Turvin*, the Court interpreted *Mendez* and clarified, "[w]e hold that *Mendez*'s conclusion that officers do not need reasonable suspicion to ask questions unrelated to the purpose of an initially lawful stop applies here because Christensen's question and request for consent to search did not unreasonably prolong the duration of the stop. Because we decide on this basis, we do not reach the issue of whether reasonable suspicion supported Christensen's questioning." *Turvin*, 517 F.3d at 1103-04. In *Turvin*, the Court acknowledged that reasonable suspicion would be required if the officers' unrelated questioning prolonged the duration of the stop. *Id.* Here, this Court has determined that, drawing all inferences in favor of the plaintiff, the traffic stop was unnecessarily prolonged by Soares' questions. Unlike in *Mendez* and *Turvin*, the officers on scene prior to Soares' arrival had already completed the relevant inquiries with dispatch, such as the vehicle registration and warrant check.

Soares argues that the purpose of his continued detainment of Amanuel was to obtain contact information to serve Jammo with a subpoena. Dkt. No. 24 at 12. Amanuel argues that Soares intended to harass him and intimidate his brother from testifying as a witness. Dkt. No. 26 at 9-11. Amanuel points to Soares' questioning of Jammo's intent to commit perjury as evidence that Soares was harassing and intimidating Jammo. Dkt. No.

Case No. 13-cv-05258 NC            14

26 at 9-11.  Soares counters that he has a duty to inform the public of the law and encourage their lawful conduct.  Dkt. No. 28 at 4-6.

Soares has not presented the Court with any evidence to demonstrate that he had reasonable suspicion that Amanuel or Jammo had committed or were committing a crime, other than the traffic violation.  Soares' justification for questioning Jammo is that he needed Jammo's contact information to serve him with a subpoena.  Dkt. No. 28 at 4-6.  The Court finds that there is no rule that directs this Court to find as a matter of law that detaining a prospective witness to obtain his contact information constitutes reasonable suspicion.

Additionally, reasonable minds could differ as to the purpose of Soares' questioning.  Soares questioned Jammo for one minute before informing Jammo, "the reason why I'm here is because you need to be in court next week."  Rec. 11:10.  Jammo confirmed, "I am going to be in court next week."  Rec. 11:10-11:14.  Soares continued to ask Jammo to provide his phone number and contact information for the subsequent four minutes.  Rec. 11:14-15:19.  Fifteen minutes into the stop, Soares asked Jammo, "Did you get subpoenaed for next week?" and Jammo replied, "Yeah, I did."  Rec. 15:19-15:29.  Soares then asked Jammo if he was going to lie.  Rec. 15:29.  Ultimately, officers let Amanuel and Jammo go without ticketing Amanuel for his admitted traffic violation, giving Jammo a subpoena, or obtaining a mailing address for Jammo.  The Court finds that considering this evidence, drawing all inferences and resolving all doubts in favor of the nonmoving party, a reasonable juror could conclude that Soares' purpose in continuing the detainment was to harass or intimidate Jammo.  *Liberal*, 632 F.3d at 1079-82.  Thus, the Court DENIES defendant's motion for summary judgment as to plaintiff's unreasonable seizure claim.

### 4.     Hiruy Amanuel's Standing

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement."  *Brendlin v. California*,

551 U.S. 249, 254 (2007) (internal citations omitted). "The law is settled that in Fourth Amendment terms a traffic stop entails a seizure of the driver 'even though the purpose of the stop is limited and the resulting detention quite brief.'" *Id.* at 255 (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). Additionally, "during a traffic stop an officer seizes everyone in the vehicle, not just the driver." *Brendlin*, 551 U.S. at 255. The key factor in determining whether the Fourth Amendment is implicated is that the driver and passengers in a traffic stop reasonably expect that police officers will not let them leave or move around freely. *Id.* at 257-58.

Soares contends that Amanuel does not have standing because any alleged intimidation or harassment occurred when Soares questioned Jammo. The Court's analysis above focuses exclusively on the potentially unlawful seizure of Amanuel. Amanuel was also detained in his car for the same period of time as his brother, whether or not he was actually subjected to questioning. Amanuel did not have the keys to his car, his phone, or his license, so he could reasonably believe that he was not free to leave. Rec. 17:40-17:58. Therefore, Amanuel's constitutional right to be free from unreasonable seizures was implicated, and he has standing to challenge the seizure. Soares' actions, regardless of who was the subject of his inquiry, caused both brothers to continue to be detained.

Additionally, the parties disagree whether Amanuel was a witness in *People v. Stephen Pine* and whether Soares intended to intimidate only Jammo or both brothers. The Court finds this dispute relevant to the question of whether Soares had a valid investigatory intent, but not relevant to Amanuel's standing to challenge his detention.

### D. Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability

when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity is immunity from suit and should be decided prior to trial. *Mitchell v. Forsyth*, 472 U.S. 511 (1985); *Saucier v. Katz*, 533 U. S. 194, 201 (2001).

Courts generally engage in a two-part analysis in determining whether qualified immunity should apply. *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014). First, a court must determine whether the facts, "[t]aken in the light most favorable to the party asserting the injury . . . show the officer's conduct violated a [constitutional] right." *Id.* (quoting *Saucier*, 533 U. S. at 201). As discussed above, the Court concludes that the first prong of the test has been met because in the light most favorable to Amanuel, a reasonable jury could find that Soares engaged in an unconstitutional seizure of Amanuel.

Second, "[a]n officer conducting a search is entitled to qualified immunity where clearly established law does not show that the search violated the Fourth Amendment." *Pearson*, 555 U.S. at 243-44. "[T]he salient question . . . is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." *Id.* (internal quotation marks and citation omitted). This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Court finds that in January 2013, when the traffic stop occurred, the Ninth Circuit had clearly established that a traffic stop extended without a valid investigatory purpose was unreasonable. In *Liberal v. Estrada*, 632 F.3d 1064, 1079-82 (9th Cir. 2011), the Ninth Circuit considered whether officers were entitled to qualified immunity when they prolonged a traffic stop beyond the time necessary to issue a traffic ticket. There, the stop in question was a total of forty minutes. *Id.* The Ninth Circuit held that qualified immunity did not apply because "[a]t the time of his detention, the law was clearly established that a prolonged seizure without a valid investigatory purpose was

unreasonable in violation of the Fourth Amendment." *Id.* at 1079-80 (citing *Royer*, 460 U.S. at 500). The Court found that the reasonableness of a traffic stop hinged on the actions of the officers, and not on the amount of time for the entire stop. *Id.* (noting, "we did not hold . . . that all detentions of 20 minutes are per se reasonable.") Instead, the test for deciding whether the length of a detention was unreasonable requires three considerations: (1) whether the police were acting in a swiftly developing situation; (2) whether a suspect's actions contributed to the added delay; (3) whether "[i]n attempting to confirm or dispel his suspicions of illegal activity, [the officer] used . . . threats of force, unnecessary delays, exaggerated displays of authority or other coercive tactics." *Id.* (citing *Torres-Sanchez*, 83 F.3d at 1129; *Sharpe*, 479 U.S. at 685-86). In *Liberal*, the Court found that officers were engaging in exaggerated displays of authority, which was not a valid investigatory purpose, so the officers were not entitled to qualified immunity. *Id.*

     Here, Soares does not contend that he was responding to a swiftly developing situation. Soares claims that Jammo contributed to the delay because he was evasive about his phone number and current address. Dkt. No. 28 at 3. The Court finds that some delay was likely added by Jammo's indirect answers. On the third prong, Amanuel argues that Soares did engage in unnecessary delay and coercive tactics to intimidate Jammo from testifying at trial. Dkt. No. 26 at 9-11. Soares acknowledges that his inquiries were not directed towards the purpose of the traffic stop. Dkt. No. 28 at 4-6. His questions were also not aimed at discovering information about criminal activity for which he had a reasonable suspicion was occurring. Additionally, Soares' questioning occurred during a traffic stop while Amanuel and Jammo were unable to leave. The Court concludes that the law was clearly established in January 2013 that an officer may not prolong a traffic stop beyond the time necessary to issue a traffic ticket, and that a reasonable officer would not continue detaining an individual absent further reasonable suspicion of criminal activity. Therefore, the Court DENIES defendant's motion to be immune from suit.

//

### E. Punitive Damages

Soares argues that punitive damages are inapplicable to this case because Soares only spoke with Amanuel for thirty seconds, not long enough to demonstrate any ill will or spite towards Amanuel. Dkt. No. 24 at 16.

"Punitive damages serve to punish the defendant for wrongful conduct and to deter the defendant and others from repeating that wrong." *Dang v. Cross*, 422 F.3d 800, 810 (9th Cir. 2005). In a § 1983 action, punitive damages can be awarded for "reckless or wanton conduct, malicious conduct, and oppressive conduct." *Id.*

Amanuel alleges that Soares' conduct was intended to harass and intimidate him and his brother. The Court finds, drawing all inferences and resolving all doubt in favor of Amanuel, that a reasonable juror could determine that Soares intended to harass or intimidate Amanuel as discussed above. Therefore, the Court finds that punitive damages are not precluded as a matter of law, and Soares' motion for summary judgment as to punitive damages is DENIED.

## IV. CONCLUSION

The Court GRANTS in part and DENIES in part defendant's motion for summary judgment, as follows:

1. The Court GRANTS defendant's motion for summary judgment as to suit in Soares' official capacity. That claim is DISMISSED.
2. The Court DENIES defendant's motion for summary judgment as to the unreasonable search claim.
3. The Court DENIES defendant's motion for summary judgment as to the unreasonable seizure claim for prolonging Amanuel's detention.
4. The Court DENIES defendant's motion for summary judgment as to Amanuel's request for punitive damages.

///

1    Accordingly, the claims remaining for trial are (1) the unreasonable search claim
2 against Soares in his individual capacity, and (2) the unreasonable seizure claim for
3 prolonging the traffic stop detention against Soares in his individual capacity.  Plaintiff
4 may seek punitive damages.  Plaintiff is instructed to inform the Court during the pretrial
5 conference whether he intends to present evidence at trial on the unreasonable search
6 claim.

**IT IS SO ORDERED.**

Dated:  June 3, 2015                                   _____
NATHANAEL M. COUSINS
United States Magistrate Judge